## THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

BEER EXCHANGE, LLC,        )
a Michigan limited liability corporation,  )
        )
        )
    Plaintiff,        ) Civil Action No. _____
        )
    v.        ) Honorable    _____
        )
        )
        )
D O D Enterprises, Ltd.        )
a Michigan corporation,        )
        ) JURY TRIAL DEMANDED
    Defendant.        )
_____)

Barbara L. Mandell (P36437)
Melissa R. Atherton (P76532)
FISHMAN STEWART PLLC
39533 Woodward Avenue, Ste. 250
Bloomfield Hills, Michigan 48304
Tel: 248-594-0600
Fax:  248-594-0610
*Attorneys for Plaintiff*

## VERIFIED COMPLAINT AND JURY DEMAND

Plaintiff, Beer Exchange, LLC ("Beer Exchange"), through its undersigned

attorneys, for its Complaint against Defendant, D O D Enterprises, Ltd. operating

as Dick O' Dow's ("Defendant" or "Dick O' Dow's"), states as follows:

## NATURE OF THE ACTION

1.      This is a civil action for damages and injunctive relief alleging acts of dilution, trademark infringement, unfair competition and passing off under federal, state and/or common law, including willful infringement of Plaintiff's rights in its **BEER EXCHANGE®, THE BEER EXCHANGE®** and **KALAMAZOO BEER EXCHANGE®** service marks and trade names (collectively, "Plaintiff's BEER EXCHANGE Marks").

2.      Plaintiff owns a one-of-a-kind bar and grill in Kalamazoo, Michigan that operates under Plaintiff's BEER EXCHANGE Marks.  Plaintiff's bar and grill is "one-of-a-kind," for, among other reasons, the following: a bell rings at 6pm every day to signal the start of beer "trading," in which craft beers, including many hard-to-find craft beers, are priced according to customer demand (the higher the demand, the higher the price).  Generally speaking, the price of each beer fluctuates in approximately twenty-five cent increments; the beer prices change every fifteen minutes; and, occasionally, the market "crashes" resulting in low beer prices.

3.      By all accounts, Plaintiff's gastro pub is famous, not only in Michigan but throughout the nation: ratebeer.com named it the number one craft beer bar in the state of Michigan for three years in a row; Thrillist Magazine has highlighted Plaintiff on its "The 18 Best Beer Bars in Michigan", "The 10 Best Michigan Bars

Outside of Detroit" and "21 Best Theme Bars in America" lists; thechive.com has featured Plaintiff in its "Awesome Theme Bars Around the Country" and "Brilliant bar ideas that deserve butts in stools" lists; Plaintiff's restaurant has been featured in other publications such as Time Magazine, Brain Jet, USA Today, REDDIT, Draft Magazine, Midwest Living, the Detroit Free Press, Michigan Restaurateur and, most recently, Playboy magazine.

4.     The entrepreneur behind Plaintiff's restaurant/bar is James Flora, a former food and beverage manager for a local Marriott Hotel, who has spent nearly a decade building Plaintiff into the phenomenal success it enjoys today.

5.     As Plaintiff nears its eighth anniversary, it intends to open a new bar/restaurant in the metro-Detroit area under Plaintiff's BEER EXCHANGE marks and/or DETROIT BEER EXCHANGE mark.  This new location will feature a unique menu and the same stock market-inspired theme that has made Plaintiff's Kalamazoo location famous.

6.     As with all things famous, Plaintiff has spent significant amounts of money policing its brand and stopping would-be infringers from trading off of the goodwill generated by Plaintiff's BEER EXCHANGE Marks.

7.     Yet, notwithstanding Plaintiff's priority of use and four United States trademark registrations (which give it nationwide rights in its BEER EXCHANGE Marks), a Birmingham, Michigan-based Irish pub called Dick O' Dow's has

signaled that it plans to be the next infringer, gearing up to steal not only Plaintiff's marks but to free-ride on Plaintiff's hard won fame.

8.    On information and belief, in the coming weeks, Defendant will attempt to revitalize its bar by opening a stock market-inspired bar and restaurant in Birmingham, Michigan under the name "The Dow Beer Exchange**"** and/or "The Beer Exchange" (collectively, "Dow Beer Exchange Marks"). See **Exhibit A.**

9.    In further emulation of Plaintiff's business methods, "At 5p.m. on weekdays and noon on weekends" a bell will ring at Defendant's bar and the price of craft beer will fluctuate by "a quarter or two" "every 15 minutes based on demand." Id.  Defendant will serve a "selection of limited run and hard-to-find beers like Founders Kentucky Breakfast Stout, Perrin Black Lager, Short's Slumlord, Pigeon Hill Oatmeal Stout, and Southern Tier Brewing Company's Cold Press Coffee Pumking."  "[T]he cost for beers of which customers aren't drinking as much will drop . . ." and "the market will crash occasionally, leaving all beers at 25 cents over cost."  Id.

10.    Upon information and belief, each of the aforementioned elements of Defendant's business plan, from the ringing of a bell to the specific craft beers on tap, to the pricing scheme, to its name are identical or nearly identical to Plaintiff's bar and restaurant operating under Plaintiff's BEER EXCHANGE Marks in Kalamazoo.  Not surprisingly, consumers are already confused and have stated on

the record on Facebook® their beliefs that Plaintiff is affiliated with Defendant. This violates Plaintiff's statutory and common law trademark rights and constitutes unfair competition.

## THE PARTIES

11.     Plaintiff is a Michigan limited liability company, formed on October 14, 2008, with its principal place of business at 205 E. Water St., Kalamazoo, Michigan 49007.

12.     Upon information and belief, Defendant is a Michigan company, formed on November 18, 1991, with an address of 160 W Maple Rd., Birmingham,  Michigan  48009.

## JURISDICTION AND VENUE

13.     This Court has federal question jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) and (b).

14.     This Court has supplemental jurisdiction over Count II of this action pursuant to 28 U.S.C. § 1367(a) as it is so related to Counts I, III and IV that it forms part of the same case or controversy.

15.     This Court has personal jurisdiction over Defendant by virtue of its business transactions and solicitation of business in this District.  Specifically,

upon information and belief, Defendant operates a bar and restaurant in Birmingham, Michigan called Dick O' Dow's.

16.     Venue in this District is proper pursuant to 28 U.S.C. §§ 1391(b),(c), and (d) because, upon information and belief, Defendant is located in the District and serves customers in this District. Accordingly, the damages suffered by Plaintiff are being suffered in this District. As such, venue is proper.

## GENERAL ALLEGATIONS

### PLAINTIFF'S ACTIVITIES AND PROPRIETARY RIGHTS

17.     Customers from all over the country patron Plaintiff's bar/restaurant in Kalamazoo.

18.     Plaintiff has continuously and extensively used in commerce Plaintiff's BEER EXCHANGE Marks, which solely consist of or are dominated by the term "BEER EXCHANGE," since at least as early as November 3, 2010.

19.     Since this date, Plaintiff has owned and operated a bar and restaurant/café in Kalamazoo, Michigan selling a broad range of food and drink under Plaintiff's BEER EXCHANGE Marks ("Plaintiff's Services"). Plaintiff is in the process of selecting the location of a second bar in the metro-Detroit area that will likewise sell a broad range of food and drink under Plaintiff's BEER EXCHANGE Marks and/or the DETROIT BEER EXCHANGE service mark.

6

20.     As a result of the quality of Plaintiff's Services and the widespread promotion thereof under Plaintiff's BEER EXCHANGE Marks, Plaintiff's Services have been met with substantial commercial success and customer recognition and, as noted above, Plaintiff is expanding to additional geographic areas under Plaintiff's BEER EXCHANGE Marks.  As a further result, Plaintiff's BEER EXCHANGE Marks have become a symbol of Plaintiff, its unique and high quality services and offerings and its goodwill.

21.     In recognition of the valuable rights in and to Plaintiff's BEER EXCHANGE Marks, the U.S. Patent and Trademark Office has granted the following trademark registrations to Plaintiff (collectively "Plaintiff's Registrations"):

a.     Registration No. 4,201,369 for the mark KALAMAZOO BEER EXCHANGE and logo for "*bar services; café services; food preparation services; preparation of food and beverages; providing of food and drink; restaurant and café services; restaurant services; serving food and drink*" in International Class 43, which was filed on December 5, 2011 and matured to registration on September 4, 2012;

b.     Registration No. 4,229,041 for the mark KALAMAZOO BEER EXCHANGE for "*bar services; food preparation services;*

7

*preparation of food and beverages; providing of food and*

*drink; restaurant and café service; serving food and drinks"* in

International Class 43, which was filed on December 5, 2011

and matured to registration on October 23, 2012;

c.   Registration No. 4,683,819 for the mark THE BEER

EXCHANGE for "*Bar services featuring wine, beer;*

*Restaurant and cafe services; Serving food and drinks*" in

International Class 43, which was filed on February 12, 2014

and matured to registration on February 10, 2015; and,

d.   Registration No. 5,127,838 for the mark BEER EXCHANGE

for "*shirts and short-sleeved shirts; Graphic T-shirts; T-shirts*"

in class 25 and "Bar services featuring wine, beer, cocktails;

Restaurant and café services" in class 43, which was filed on

May 31, 2016 and matured to registration on January 24, 2017.

These registrations are valid, subsisting, and in full force and effect.  Copies of the

certificates of registration for these registrations are attached as **Exhibit B**.

22.   Pursuant to Section 7(b) of the Lanham Act, 15 U.S.C. § 1057(b), the

above federal registrations constitute *prima facie* evidence of the validity of

Plaintiff's BEER EXCHANGE Marks, as well as Plaintiff's ownership and

exclusive right to use Plaintiff's BEER EXCHANGE Marks in commerce in

8

connection with the identified services. Moreover, Registration No. 4,201,369 is incontestable and therefore constitutes *conclusive* evidence of the validity of the mark, the registration therefor, our client's ownership of the mark and registration and our client's exclusive right to use the mark throughout the United States.

23.     Plaintiff also owns pending Application Serial No. 87/620,294 for DETROIT BEER EXCHANGE, which was filed under Section 1(b) on September 24, 2017 for "*Bar services; Café services; Preparation of food and beverages; Serving food and drinks; Restaurant and bar services*" in class 43.  Plaintiff also owns the www.detroitbeerexchange.com domain name.

24.     As noted above, Plaintiff's bar services provided under Plaintiff's BEER EXCHANGE Marks that feature "demand pricing" are designed to mimic the ups and downs of a stock market.

25.     Over the years, Plaintiff has spent a substantial amount of money advertising and promoting its services under Plaintiff's BEER EXCHANGE Marks via various types of media, including its Facebook® page, which has 19,279 "likes" and 18,822 "followers."

26.     As a result of Plaintiff's extensive marketing, Plaintiff's gastropub is well-known by residents throughout Michigan, including those in southeast Michigan: it has received statewide and nationwide attention; ratebeer.com named it the number one craft beer bar in the state of Michigan for three years in a row;

Thrillist Magazine has highlighted Plaintiff on its "The 18 Best Beer Bars in Michigan", "The 10 Best Michigan Bars Outside of Detroit" and "21 Best Theme Bars in America" lists; thechive.com has featured Plaintiff in its "Awesome Theme Bars Around the Country" and "Brilliant bar ideas that deserve butts in stools" lists; Plaintiff's restaurant has been featured in other publications such as Time Magazine, Brain Jet, USA Today, REDDIT, Draft Magazine, Midwest Living, the Detroit Free Press, Michigan Restaurateur and, most recently, Playboy magazine.

**Exhibit C.**

### DEFENDANT'S INJURY TO PLAINTIFF AND TO THE PUBLIC

27.    Upon information and belief, Defendant intends to open a stock market-inspired bar featuring the exact same elements of Plaintiff's bar – including an opening bell, demand pricing for craft beer and beer market crashes – and, using a name that is identical or nearly identical to Plaintiff's registered BEER EXCHANGE Marks, namely, The Dow Beer Exchange.

28.    Upon information and belief, Defendant's bar will be located in Birmingham, Michigan.

29.     On August 28, 2017, Dick O' Dow's announced via its Facebook® page that it was "just about a month away from the opening of our new bar.  The Dow Beer Exchange…"



30.     On August 29, 2017, Mr. Brian OConnor commented on the
aforementioned  Facebook® post, stating that he had "Been to the Beer exchange
in Kzoo.  Awesome!!!"  Upon information and belief, Mr. OConnor mistakenly
believed that Defendant's bar was sponsored, endorsed or somehow related to
Plaintiff's bar in Kalamazoo.



31.     Plaintiff became aware of Defendant's use of The Dow Beer

Exchange in connection with bar/restaurant services as a result of an article

published by the Detroit Metro Times on September 21, 2017. See also, **Exhibit A.**



32.   In response to the Detroit Metro Times article, one individual suggested that Defendant copied Plaintiff's bar; another excitedly exclaimed that she would not have to "trek" to Kalamazoo to visit Plaintiff's bar anymore.



33.     Despite its knowledge of Plaintiff, on information and belief, on September 14, 2017, Defendant began recruiting employees under the The Dow Beer Exchange mark as shown below.



<u>**COUNT I**</u>
**Federal Trademark Infringement**
**Violation of 15 U.S.C. § 1114**

34.     Plaintiff incorporates by reference the allegations of Paragraphs 1 – 33 of this Complaint.

35.     Without Plaintiff's authorization, Defendant has announced plans to use the Dow Beer Exchange trademarks, which are identical or nearly identical to Plaintiff's BEER EXCHANGE Marks.  Further, the nature of the bar services that Defendant intends to provide under the Dow Beer Exchange trademarks, namely a stock market-inspired bar with demand pricing for craft beer, is identical to the nature of the bar services provided by Plaintiff under Plaintiff's BEER EXCHANGE Marks.   In doing so, Defendant has used service marks, trade names and common law marks that are likely to cause confusion, to cause mistake or to deceive, as to the origin, sponsorship, or approval of Defendant's services and commercial activities.  Thus, Defendant has infringed Plaintiff's rights in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

36.     As shown above (¶ 30), Defendant's use of the Dow Beer Exchange marks in connection with a stock market-inspired bar has already caused and will continue to cause consumer confusion, mistake and/or deception to the public as to the source or origin of the parties' services, and is likely to falsely suggest an

affiliation, sponsorship, connection, with Plaintiff, or a license or endorsement of Defendant's services by Plaintiff.

37.    Upon information and belief, the parties' customers overlap and will likely continue to overlap because both parties have potential customers in Michigan interested in establishments that feature demand pricing for craft beer. In fact, in response to the Detroit Metro Times article (¶ 32), one of Plaintiff's customers exclaimed that "we might not have to trek all the way to K zoo anymore!"  This demonstrates that the parties' customers actually do overlap. Accordingly, Defendant's services are likely to cause confusion, mistake or deception as to the origin, sponsorship, or approval of Defendant's services and thus infringe Plaintiffs' rights in the above federally registered mark under 15 U.S.C. § 1114.

38.    Due to Plaintiff's widespread success and favorable press reported throughout Michigan and the nation, it seems inconceivable that Defendant could not have known about Plaintiff's Kalamazoo-based bar before creating plans to open a Michigan bar and grill under the Dow Beer Exchange marks.  At a minimum, the above-copied screenshot from Defendant's Facebook® page (¶32), wherein various Facebook® users reference Plaintiff, proves that Defendant has been aware of Plaintiff since at least as early as August 29, 2017.  Yet, despite such knowledge, Defendant persists in readying operations for its bar under the

17

Dow Beer Exchange marks.   Accordingly,  because Defendant's actions, on information and belief, were carried out intentionally, willfully and/or deliberately in violation of Plaintiff's rights, Plaintiff is entitled to an award of treble damages under Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

39.    As shown above (¶30), Defendant's use of the Dow Beer Exchange marks has caused instances of actual confusion, has injured and, unless enjoined, will continue to irreparably injure Plaintiff by confusing customers, by leading customers to erroneously believe that there is a relationship, sponsorship, license, or approval between Plaintiff and Defendant.

40.    Defendant's use of Plaintiff's intellectual property in connection with its intended bar and restaurant services will irreparably injure Plaintiff, for which it has no adequate remedy at law.  Therefore, Plaintiff is entitled to the remedies provided from 15 U.S.C. §§1116, 1117.

41.    This is an exceptional case, and thus Plaintiff is entitled to an award of attorneys' fees under Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

## COUNT II
### Common Law Unfair Competition, Misappropriation And Trademark Infringement
### 15 U.S.C. § 1114

42.    Plaintiff incorporates by reference the allegations of Paragraphs 1 – 41 of this Complaint.

43.     Defendant's conduct amounts to infringement under the common law of the state of Michigan and has been wanton, malicious and in reckless disregard of the superior trademark rights of Plaintiff.

44.     Defendant's wanton, willful and wrongful acts of infringement irreparable harms Plaintiff and such conduct will continue unless enjoined by this Court.  Plaintiff lacks an adequate remedy at law to halt such conduct.

45.     By its aforesaid conduct calculated to increase business and profits by deceiving and confusing members of the public, on information and belief Defendant intends to misappropriate the valuable goodwill of Plaintiff's BEER EXCHANGE Marks, to infringe Plaintiff's rights therein, and to unfairly compete with Plaintiff under the laws of Michigan.

## Count III
### Federal Unfair Competition and Passing Off
### Violation of 15 U.S.C. §1125(a)

46.     Plaintiff incorporates by reference the allegations of Paragraphs 1 – 45 of this Complaint.

47.     On information and belief, the unauthorized use by Defendant of Plaintiff's BEER EXCHANGE Marks for services apparently identical to Plaintiff's services is likely to cause the public to mistakenly believe that Defendant's services originate from, are endorsed by or are in some way affiliated with Plaintiff and thus constitutes false designation of origin, passing off, and

unfair competition.  Defendant's actions are in violation of Section 43(a) of the
Lanham Act, 15 U.S.C. § 1125(a).

<b>Count IV</b><br><b>Dilution</b><br><b>Violation of 15 U.S.C. §1125(c)</b>

48.    Plaintiff incorporates by reference the allegations of Paragraphs 1- 47
of this Complaint.

49.    Plaintiff's BEER EXCHANGE Marks are distinctive.

50.    On a date prior to Defendant's adoption of the Dow Beer Exchange
marks,  Plaintiff's BEER EXCHANGE Marks became famous.

51.    Defendant's use of the Dow Beer Exchange marks will dilute the
distinctiveness of Plaintiff's BEER EXCHANGE Marks that are famous, by
tarnishing the marks and by blurring their distinctiveness.

<b>Count V</b><br><b>Request for Permanent Injunction</b>

52.    Plaintiff incorporates by reference the allegations of Paragraphs 1- 51
of this Complaint.

53.    Plaintiff requests injunctive relief to prevent Defendant from
continuing to using any mark that incorporates "BEER" and "EXCHANGE" or
"EXCHANGE".

54.    If not enjoined, Plaintiff will suffer immediate and irreparable harm

20

in that the value in its Marks will be lost.

55.     If not enjoined, there is a strong likelihood of injury to Plaintiff's

business reputation or of dilution of the distinctive quality of Plaintiff's BEER

EXCHANGE Marks.

56.     If not enjoined, consumers will continue to be misled and confused as

to whether there is an affiliation between the parties or whether Defendant's

services are licensed by or otherwise affiliated with Plaintiff's services.

57.     Plaintiff has shown a probable right of recovery and likelihood of

success on the merits on its claims against Defendant and that Plaintiff will suffer

imminent, irreparable harm without Court intervention, for which there is no

adequate remedy at law.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court enter judgment in its favor

on each and every claim for relief set forth above and award them relief including,

but not limited to, the following:

A.     A Judgment that Defendant, its agents, servants, employees, attorneys,

and all persons in active concert or participation with them, be preliminarily and

permanently enjoined and restrained from (1) using any of Plaintiff's BEER

EXCHANGE Marks, any designations incorporating any of those Marks and any

copy, reproduction, colorable imitations or variations thereof; (2) using any trademark, service mark, name, logo, or source designation of any kind that incorporates "BEER" and "EXCHANGE"; (3) using any trademark, service mark, name, logo, or source designation of any kind that incorporates "EXCHANGE"; (4) using any trademark, service mark, name, logo, or source designation of any kind that is likely to cause confusion, mistake, deception or public misunderstanding that Defendant's services are provided by Plaintiff, or otherwise misrepresenting in any way the source of origin of any services they provide; and (5) otherwise infringing Plaintiff's BEER EXCHANGE Marks and competing unfairly with Plaintiff.

     B.    A Judgment that Defendant willfully violated Plaintiff's rights and, consequently, that Defendant be required to pay to Plaintiff's damages according to proof, together with prejudgment interest thereon, as Plaintiff has sustained as a consequence of Defendant's wrongful acts, and to account for and return to Plaintiff any monies, profits and advantages wrongfully gained by Defendant.

     C.    That all damages sustained by Plaintiff be trebled.

     D.    That Defendant be required to pay to Plaintiff punitive and exemplary damages.

     E.    That Defendant be required to pay to Plaintiff all attorney fees, expenses and costs incurred in this action.

F.      That, pursuant to 15 U.S.C. §1118, Defendant be ordered to deliver up for destruction all materials, including, but not limited to brochures, advertisements, business cards and all other matter in the custody or under the control of Defendant bearing a mark comprised of "BEER" and "EXCHANGE" or "EXCHANGE."

G.      That an Order be issued directing Defendant to file with this Court and serve on Plaintiff's attorneys, within thirty (30) days after the date of entry of any injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction.

H.      That an Order be issued directing Defendant to account to Plaintiff for all profits from their infringement of Plaintiff's BEER EXCHANGE Marks.

I.      That Plaintiff be granted such further relief as this Court may deem appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

Respectfully submitted,

FISHMAN STEWART PLLC

Date:  September 26, 2017

By:   /s/ Barbara L. Mandell (P36437)
Barbara L. Mandell (P36437)
Melissa R. Atherton (P76532)
39533 Woodward Ave., Suite 140
Bloomfield Hills, MI 48304
Tel.: (248) 594-0600
Fax: (248) 594-0610
bmandell@fishstewip.com
matherton@fishstewip.com
*Attorneys for Plaintiff*

## VERIFICATION OF ALLEGATIONS OF COMPLAINT

I, James Flora, an officer of Beer Exchange, LLC, have personal knowledge of the facts and allegations contained herein and, on penalty of perjury, verify that such facts are true, except so far as they are stated to be on information and belief, and that, so far as they are therein stated to be on information and belief, I believe them to be true.

September 26, 2017                 Signature: _____

25